# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>RUSSELL R. WASENDORF, SR.,<br><br>    Defendant. | No. 12-CR-2021-LRR<br><br>**ORDER** |

_____

## *I. INTRODUCTION*

The matters before the court are the government's "Motion to Stay and Revoke Magistrate Judge's Order Regarding Pretrial Detention" ("Motion to Revoke the Magistrate Judge's Order") (docket no. 22) and "Motion to Detain Defendant Pending Sentencing" ("Motion to Detain") (docket no. 30).

## *II. RELEVANT PROCEDURAL HISTORY*

On September 11, 2012, Defendant Russell R. Wasendorf, Sr. entered into a plea agreement with the government. *See* Plea Agreement, Government Exhibit 17 (docket no. 14-15). On that same date, United States Magistrate Judge Jon S. Scoles held a detention hearing. On September 13, 2012, Judge Scoles entered an Order (docket no. 15) finding that detention was not authorized under 18 U.S.C. § 3142, which governs release or detention pretrial. Alternatively, Judge Scoles found that the government failed to prove by a preponderance of the evidence that there was no condition or set of conditions that would reasonably assure Defendant's appearance as required. Accordingly, Judge Scoles ordered Defendant to be released, subject to certain conditions, following his September 17, 2012 plea hearing.

On September 17, 2012, the government filed the Motion to Revoke the Magistrate Judge's Order. On that same date, the court entered an Order (docket no. 25) staying Judge

Scoles's September 13, 2012 Order pending further order of the court. Defendant thereafter pleaded guilty to a four-count Information (docket no. 18), which charged Defendant with mail fraud, embezzling customer funds, making false statements to the Commodity Futures Trading Commission and making false statements to the National Futures Association.

Following Defendant's guilty plea, the government filed the Motion to Detain.[1] In the Motion to Detain, the government requests that the court detain Defendant pursuant to 18 U.S.C. § 3143(a), which governs release or detention pending sentencing. On September 24, 2012, Defendant filed a Resistance (docket no. 33) to both the Motion to Revoke the Magistrate Judge's Order and the Motion to Detain. On September 27, 2012, the government filed a Reply (docket no. 34) to Defendant's Resistance. On October 3, 2012, the court accepted Defendant's guilty plea. *See* October 3, 2012 Order (docket no. 35).

Neither party has requested a hearing on either the Motion to Revoke the Magistrate Judge's Order or the Motion to Detain, and the court finds that a hearing is unnecessary. The matter is fully submitted and ready for decision.

### III. *MOTION TO REVOKE THE MAGISTRATE JUDGE'S ORDER*

In the Motion to Revoke the Magistrate Judge's Order, the government argues that Judge Scoles erred in finding that detention was not authorized and that the government failed to prove by a preponderance of the evidence that no condition or set of conditions would reasonably assure Defendant's appearance as required.

The court finds that it is unnecessary to address the Motion to Revoke the Magistrate Judge's Order. At the time Judge Scoles entered the September 13, 2012 Order, Defendant had not yet pleaded guilty. Thus, 18 U.S.C. § 3142 provided the applicable standard for

---

[1] The court notes that the government failed to comply with Local Rule 7(d), which requires that a moving party file a brief "as an electronic attachment to the motion it supports under the same docket entry as the motion." LR 7(d). Nevertheless, the court shall consider the Motion to Detain.

determining whether detention was appropriate. On September 17, 2012, however, Defendant entered a plea of guilty to the Information, and, on October 3, 2012, the court accepted Defendant's guilty plea. After a defendant has pleaded guilty, 18 U.S.C. § 3143 provides the applicable standard. Consequently, the court need not review Judge Scoles's Order; rather, the court shall address the appropriateness of Defendant's continued detention in connection with its discussion of the Motion to Detain. Therefore, the court shall deny as moot the government's Motion to Revoke the Magistrate Judge's Order.

### IV. MOTION TO DETAIN

#### A. Standard of Review

Title 18, United States Code, Section 3143(a) governs a defendant's release or detention pending sentencing. Section 3143(a) provides, in relevant part:

> [T]he judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. [§] 994 does not recommend a term of imprisonment, be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c).

18 U.S.C. § 3143(a); *see also* Fed. R. Crim. P. 46(c) ("The provisions of 18 U.S.C. § 3143 govern release pending sentencing . . . .).

The presumption in 18 U.S.C. § 3142(b), which governs a defendant's release or detention before trial, favors release. *United States v. Kills Enemy*, 3 F.3d 1201, 1203 (8th Cir. 1993) (citing 18 U.S.C. § 3142(b)). In contrast, the presumption in 18 U.S.C. § 3143(a), which governs a defendant's release or detention after a finding of guilt and before sentencing, favors detention. *Id.* (citing 18 U.S.C. § 3143(a)). As a result, "[a] convicted person awaiting sentence is no longer entitled to a presumption of innocence or presumptively entitled to his freedom." *Id.* A defendant carries the burden to show by

clear and convincing evidence that he or she "is not likely to flee if released upon suitable conditions." *United States v. Welsand*, 993 F.2d 1366, 1367 (8th Cir.1993) (per curiam); *see also* Fed. R. Crim. P. 46(c) ("The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant.").

### B. Parties' Arguments

In the Motion to Detain, the government argues that Defendant has failed to prove by clear and convincing evidence that he is not a flight risk. The government points to the nature and circumstances of the offense; specifically, "Defendant stole approximately $200,000,000 in investor funds over the course of approximately 20 years." Motion to Detain at 9. Under the applicable Sentencing Guidelines calculation, as agreed to by the parties in the plea agreement, Defendant is facing a minimum Guidelines range of 292 to 365 months of imprisonment. The government notes that, due to Defendant's age, "[t]he likelihood of [D]efendant serving the remainder of his life in prison appears exceedingly high." *Id.* at 10. Furthermore, the government argues that the court should consider Defendant's history and characteristics, including his "history of deception," his failed suicide attempt and the fact that his "family and community ties have all largely been erased by the events of the past few months." *Id.* at 11-15. Finally, the government notes that much of the money Defendant misappropriated is unaccounted for and he has foreign business holdings, including shares in a Romanian company. In light of these considerations, the government argues that Defendant has failed to prove by clear and convincing evidence that he does not pose a flight risk.

In response, Defendant argues that "[t]here is no evidence to suggest that [he] has, or ever had, any plans to leave his home, flee the jurisdiction, or travel to another country in an effort to avoid prosecution." Brief in Support of Resistance at 3. Defendant argues that his conduct, specifically his cooperation with both law enforcement and the Receiver, evidences his intent to accept the consequences of his actions. Moreover, Defendant argues that he lacks the ability to flee because all of his assets, including "his homes, his vehicles,

4

the plane, his credit cards, . . . his bank accounts" and even his passport, have been secured by the Receiver. *Id.* at 4. Defendant notes that the government's evidence shows that the Romanian company, "while highly valuable at one point, was recently nearly insolvent." *Id.* at 6 (citing News Article, Government Exhibit 13 (docket no. 14-12)). Defendant further contends that he is not a flight risk despite the fact that the misappropriated funds are unaccounted for in this case. Defendant notes that the government still has documentary evidence to sort through in order to make a full accounting and, furthermore, Defendant argues that there is evidence of where much of the money went—keeping Peregrine Financial Group, Inc. in business, investing in a restaurant and investing in a construction company. Finally, Defendant argues that his proposed release plan would "'reasonably assure his appearance for further proceedings.'" *Id.* at 9 (quoting 18 U.S.C. § 3142(c)).

### *C. Ruling*

After reviewing the record, including the testimony presented at the September 11, 2012 detention hearing, the exhibits admitted during the hearing and the parties' briefs, the court concludes that Defendant has failed to prove by clear and convincing evidence that he is not likely to flee. *See* 18 U.S.C. § 3143(a). First, the court recognizes that Defendant has been very cooperative with both law enforcement and the Receiver. Nevertheless, the court is unpersuaded that Defendant lacks the motivation to flee. Without minimizing Defendant's plea and his extensive cooperation, the court notes that his chances of success had he chosen to proceed to trial were slim given the incriminating statements in his suicide note. Moreover, Defendant's attempt to end his life, while not an attempt to flee, is indicative that, at one point, Defendant was not willing to face the consequences of his actions. Now that Defendant has pleaded guilty, his fears have turned to reality. Of particular note, Defendant faces a long sentence, and, in combination with his advanced age, there is a high likelihood that he will spend the remainder of his life in prison. In light of these considerations, the court finds that Defendant has a strong incentive to flee.

5

Second, the court is not satisfied that Defendant does not have the means to flee. While the Receiver has secured most of Defendant's known assets, Defendant misappropriated between $100,000,000 and approximately $200,000,000 in funds—much of which is unaccounted for to date. Moreover, Defendant has some foreign business holdings. *See* Temporary Receiver's First Report, Defendant's Exhibit G (docket no. 16) at 13-16 (discussing Defendant's foreign business interests); *see also* Transcript (docket no. 23) at 35-37 (discussing Defendant's business interests in Romania). The Receiver has been unable to secure these assets. Transcript at 43. Defendant notes that Government Exhibit 13, a recent news article, suggests that the Romanian company, Avrig 35 Group, is insolvent. However, the same article suggests that other shareholders in the company would be willing to purchase Defendant's shares. *See* News Article, Government Exhibit 13 at 1. The court further notes that Defendant has a German bank account. Transcript at 38, 57-58. Although Defendant has told authorities that the account has only $300 in it, authorities have been unable to confirm the account balance. *Id.* at 68. While Defendant points to his local ties, including his wife, friends and brother, the court is cognizant that, given his foreign business holdings, Defendant likely has overseas contacts as well. Furthermore, although Defendant states that the Receiver has secured his passport, the court notes that it is possible to flee without a passport. Although "fleeing" is typically associated with fleeing aborad, fugitives flee with the United States' boarders successfully as well. Moreover, it is possible—although difficult—to flee abroad without a passport.

Accordingly, the court finds that Defendant has failed to prove by clear and convincing evidence that he is not a flight risk. *See United States v. Madoff*, 316 F. App'x 58, 59 (2d Cir. 2009) (affirming the district court's order of detention, which "found that in light of the defendant's age (70) and the length of a potential sentence (150 years), he ha[d] an incentive to flee, and that because he ha[d] the means to do so, he present[ed] a risk of flight").

## V. CONCLUSION

In light of the foregoing, the court **ORDERS THAT**:

(1)  The Motion to Stay and Revoke Magistrate Judge's Order Regarding Pretrial Detention (docket no. 22) is **DENIED AS MOOT**; and

(2)  The Motion to Detain Defendant Pending Sentencing (docket no. 30) is **GRANTED**.

**IT IS SO ORDERED**.

**DATED** this 9th day of October, 2012.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA